[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12584

Non-Argument Calendar

_____

In re: MICHAEL D. LYNCH,
 CANDENCE B. LYNCH,

Debtors.

_____

MICHAEL D. LYNCH,
CANDENCE B. LYNCH,

Plaintiffs-Appellants,

*versus*

OCWEN LOAN SERVICING, LLC,
DEUTSCHE BANK NATIONAL TRUST COMPANY,

2                    Opinion of the Court                    22-12584

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-22231-MGC

_____

Before LAGOA, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Michael and Candence Lynch ("the Lynches") appeal the district court's affirmance of a bankruptcy court's grant of summary judgment in favor of the appellees in an adversary proceeding they filed against a loan servicer. GMAC Mortgage LLC ("GMACM") originally serviced the loan, before transferring it to Ocwen Loan Servicing, LLC ("Ocwen").

On appeal, the Lynches argue that the bankruptcy court improperly denied their motion to stay, and that the district court erred in granting summary judgment in favor of the appellees on two counts. For the reasons outlined below, we affirm.

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.  The Mortgage

In 2004, the Lynches purchased a residential property in Miami, Florida (the "Property"), which they financed with a mortgage

from New Century Mortgage Corporation ("New Century"), as evidenced by a promissory note (the "Note"). The Note was secured by the mortgage, through which the Lynches conveyed to New Century an interest in the Property. Shortly thereafter, New Century transferred the mortgage to GMACM and, in 2007, New Century filed for Chapter 11 bankruptcy.

The mortgage contained a provision waiving the necessity of creating and maintaining an escrow account. It stated that, in the event of such waiver, GMACM could revoke the waiver at any time so long as GMACM gave the Lynches notice and that, upon such revocation, the Lynches would be required to reimburse GMACM the amounts it expended on the Lynches' behalf. The mortgage also stated that, should the Lynches fail to perform the covenants and agreements set forth in the mortgage and corresponding documents, GMACM could do and pay for whatever was reasonable and appropriate to protect its interests in the Property. Moreover, the mortgage explained that any forbearance by GMACM in exercising its rights or remedies would not constitute a waiver of its rights or remedies.

Mr. Lynch signed a document containing a waiver of an escrow account, which warned the couple that if they were delinquent in paying their hazard insurance premiums, GMACM could require them to pay impounds. Mr. Lynch also signed another document which warned that, if GMACM did not receive valid proof of insurance, a hazard insurance policy would be forcibly placed on the property.

Notwithstanding these provisions, the Lynches failed to provide evidence of insurance coverage on the Property on three separate occasions.  In each instance, GMACM, after giving the Lynches notice of their insurance coverage delinquencies, obtained lender placed insurance ("LPI") on the Property.  In the first two instances, GMACM obtained LPI, but ultimately cancelled the premium without requiring payment from the Lynches after the Lynches provided proof of insurance.

On the third instance, in 2011, GMACM sent the Lynches two notices informing them that if GMACM did not receive proof of hazard insurance on the Property, GMACM would create an escrow account and use those funds to purchase LPI and the Lynches would ultimately have to cover the LPI costs.  Although GMACM gave the Lynches a total of 93 days to provide proof of hazard insurance on the Property, the Lynches failed to provide such proof, prompting GMACM to obtain LPI on the Property and establish an escrow account.  Approximately 43 days after GMACM purchased LPI for the Property, the Lynches provided proof of insurance and GMACM canceled the LPI.  Notwithstanding the LPI cancellation, the Lynches still had an escrow shortage of over $600.

Then, in July 2012, the Lynches filed a *pro se* petition for Chapter 7 bankruptcy relief in the Southern District of Florida's bankruptcy court.  In their initial bankruptcy filings, they listed the Property as an asset and identified GMACM as the primary lender. In August 2013, the Lynches declared their intent to remain on the Property and to maintain the mortgage.

### B. Adversary Complaints & Appeals

In September 2013, the Lynches filed their first adversary complaint against GMACM, Ocwen, and Deutsche Bank National Trust Co. ("Deutsche Bank"), as Trustees for certain New Century assets (collectively, "the appellees"). In their complaint, they contended that GMACM erroneously claimed on several occasions that the Lynches had not provided proof of hazard insurance for the Property, as the mortgage required, and that GMACM's continued obtainment of LPI interfered with their right to pay their insurance premium without an escrow account.

In their first adversary complaint, the Lynches noted that they had jointly filed for Chapter 7 bankruptcy in 2012, but GMACM did not file a claim or objection and, in February 2013, GMACM transferred the servicing rights to their loan to Ocwen. Then, Ocwen attempted to collect on a debt related to the preceding, which the bankruptcy court had already discharged.

Overall, as relevant to the current appeal, the Lynches asserted two counts challenging GMACM's revocation of the mortgage's escrow waiver provision. In Count 1, the Lynches argued that GMACM and Ocwen committed "Mortgage Servicing Abuse," and in Count 2, they alleged that they were entitled to a waiver of the escrow account requirement and that GMACM breached their agreement.

Before the bankruptcy court could resolve the first adversarial complaint, the Lynches filed a second adversary proceeding against the appellees which challenged the overall enforceability of

the Note.  The appellees moved for summary judgment on the Lynches' claims in the second adversary proceeding, which the bankruptcy court granted in June 2017.  The Lynches administratively appealed, and the district court affirmed in November 2017. The Lynches then appealed to this Court, where we affirmed the bankruptcy court's ruling.  *Lynch v. Deutsche Bank Nat'l Trust Co.* (*In re Lynch*), 755 F. App'x 920 (11th Cir. 2018) (unpublished).

### C.  *Summary Judgment & Motion to Stay in the First Adversarial Proceeding*

Once the proceedings on the second adversarial complaint concluded, in 2019, the appellees moved for summary judgment as to the Lynches' remaining two claims in their first adversary proceeding arguing, as relevant here, that GMACM had the right to create an escrow account on the loan after the Lynches repeatedly failed to provide evidence of insurance coverage.

In support of their motion, the appellees attached an affidavit from Richard Schwiner, a Senior Loan Analyst for Ocwen. Schwiner stated that he was among the individuals who had custody and control of Ocwen's business records regarding the Lynches' loan.  He stated that the records had been made "at or near the time of the events underlying the subject indebtedness, and recorded by a person with knowledge of the events and charged with the responsibility of recording such events" and were "kept in the ordinary course of Ocwen's regularly conducted business activities."  Schwiner attested that the affidavit was given

based on his personal knowledge and after a review of the business records.

The Lynches did not immediately oppose the appellees' motion for summary judgment. Instead, on the date upon which dispositive motions were due, the Lynches moved to stay the dispositive motion deadline and pretrial conference for 15 months. In support, they stated that they intended to move the bankruptcy court in Delaware to reopen New Century's 2007 Chapter 11 case. They claimed that they intended to file an adversary complaint in that case to challenge the validity and enforceability of the Note and documents that the bankruptcy court had rejected in their second adversary proceeding. The appellees opposed the Lynches' motion.

Following a hearing on the motion for summary judgment and the motion to stay, the bankruptcy court denied the motion to stay. Then, in May 2020, the bankruptcy court granted summary judgment in favor of the appellees on the remaining counts of the Lynches' first adversary complaint, relying in part on the Schwiner affidavit and records attached to the motion. The bankruptcy court entered an order to this effect in May 2020, and the Lynches timely appealed to the district court.

Before the district court, the Lynches argued that the bankruptcy court erred in granting summary judgment in favor of GMACM. They asserted, for the first time, that the Schwiner affidavit constituted inadmissible hearsay. With respect to the stay, they argued that the bankruptcy court's denial deprived them of

their rights to due process and equal protection because they lacked resources to simultaneously proceed in two different courts.

The district court found the affidavit admissible and affirmed the grant of summary judgment in favor of the appellees. However, the court ruled that it lacked jurisdiction to consider the bankruptcy court's denial of the motion to stay because the Lynches' appeal of that order was untimely. The Lynches filed a motion for reconsideration arguing, for the first time, that the appellees breached an implied covenant of good faith and fair dealing. They did not, however, challenge the bankruptcy court's denial of their motion for a stay. The district court denied the Lynches' motion for reconsideration, and the Lynches now appeal that lower court decision.

## II.    DISCUSSION

We liberally read briefs filed by *pro se* litigants. *Timon v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Moreover, we may affirm on any ground supported by the record, regardless of the ground stated in the district court's order or judgment. *In re Beland*, 989 F.3d 919, 922 (11th Cir. 2021).

### A.  Motion to Stay

On appeal, the Lynches maintain that the bankruptcy court abused its discretion in denying their motion for a stay.

As noted, we may affirm the district court's decision "for any reason supported by the record, even if not relied upon by the district court[.]" *Worthy v. City of Phenix City*, 930 F.3d 1206, 1216 (11th

Cir. 2019) (quoting *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015)).  This is true even in circumstances when the district court dismisses an issue on jurisdictional grounds as opposed to on the merits.  *See id.* at 1216-17 (holding that, although the district court erred in concluding that the appellants lacked standing, affirmance was still appropriate because it was supported by the record).  Indeed, the "prevailing party is entitled to defend its judgment on any ground preserved in the district court[.]"  *Id.* at 1216 (quoting *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 623 (11th Cir. 2015) (unpublished) (holding that the district court erred in dismissing a claim for lack of subject-matter jurisdiction, but nevertheless affirming the dismissal because it was supported by the record)).

"We review *de novo* questions concerning the jurisdiction of the district court." *United States v. Oliver*, 148 F.3d 1274, 1275 (11th Cir. 1998).  Whether a notice appealing a bankruptcy court's order is timely presents a jurisdictional question.  *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1318 (11th Cir. 2016).  An appeal from a final judgment presents for review all preceding non-final orders that produced it.  *Barfield v. Brierton*, 883 F.2d 923, 930-31 (11th Cir. 1989).  Generally, a final order is one that ends the litigation on the merits, leaving nothing to be done but to execute the judgment.  *Barben v. Donovan (In re Donovan)*, 532 F.3d 1134, 1136 (11th Cir. 2008).

Where a court stays proceedings on its own docket, such action is under the court's inherent powers to regulate the administration of its own business.  *Castanho v. Jackson Marines, Inc.*, 650

F.2d 546, 548 (5th Cir. Unit A June 1981); *see also Landis v. N. Am. Water Works & Elec. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket[.]").  We review a lower court's exercise of its discretionary authority to stay proceedings before it for an abuse of discretion. *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982).  This standard of review is highly deferential and extremely limited, and an abuse of discretion may only be found when the bankruptcy court fails to apply the proper legal standard or fails to follow proper procedures in making its determinations. *Law Sol. of Chi. LLC v. Corbett*, 971 F.3d 1299, 1304-05 (11th Cir. 2020).

Here, the district court erred in concluding that it lacked jurisdiction to review the bankruptcy court's denial of the Lynches' motion to stay the proceedings.  The denial of the motion to stay did not end the litigation on the merits.  Instead, the bankruptcy court did not enter its final order until after it granted summary judgment in favor of the appellees.  Thus, the Lynches' appeal from the final judgment brought up for review all preceding non-final orders that produced it, including the motion to stay. *Barfield,* 883 F.2d at 930-31.

The Lynches sought to stay the proceedings before the bankruptcy court because they intended to belatedly challenge, yet again, an unfavorable bankruptcy court decision that the district court and this Court have already affirmed. *See In re Lynch*, 755 F. App'x at 926.  The bankruptcy court acted within its inherent

discretionary authority when it denied the motion. Thus, the bankruptcy court did not abuse its discretion in denying the stay. *Law Sol. of Chi. LLC*, 971 F.3d at 1304-05. As such, we affirm on this issue.

### B. Motion for Summary Judgment

The Lynches also argue that the bankruptcy court erred in granting the appellees' motion for summary judgment on Counts 1 and 2. They contend that the bankruptcy court erroneously relied on the Schwiner affidavit because it was not a properly authenticated business record and, thus, constituted inadmissible hearsay. They also argue that they adequately pled a claim for breach of the implied covenant of good faith and fair dealing, and assert that GMACM breached the contract first, and therefore waived its right to revoke the escrow waiver provision.

We, as a second court of review of a bankruptcy court's decisions, independently examine that court's factual and legal determinations, applying the same standards of review as the district court. *In re Int'l Admin. Serv., Inc.*, 408 F.3d 689, 698 (11th Cir. 2005). Where the district court has made no factual findings in its function as an appellate court, our review is *de novo*. *Id*. We review *de novo* any determinations of law and review the bankruptcy court's factual findings for clear error. *Id*. Nevertheless, neither we nor the district court may make independent factual findings. *Law Sol. of Chi. LLC*, 971 F.3d at 1304. Importantly, we generally decline to review issues on appeal that a party did not first raise with the

bankruptcy court.  *Ala. Dep't of Econ. & Cmty. Affs. v. Ball Healthcare-Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1226 (11th Cir. 2011).

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Federal Rules of Bankruptcy Procedure incorporate by reference the summary judgment standard from the rules of civil procedure and apply that same standard in adversary proceedings.  Fed. R. Bankr. P. 7056.

A statement that is otherwise inadmissible hearsay is admissible as a business record if it is a record of an event and: (1) was made at or near the time of the event by someone with knowledge; (2) was kept in the course of a regularly conducted business activity; (3) making the record was a regular practice of that activity; and (4) those conditions are shown by the testimony of the custodian of the records or another qualified witness.  Fed. R. Evid. 803(6).  The "qualified witness" need not himself have prepared the documents, "so long as other circumstantial evidence and testimony suggest their trustworthiness."  *Itel Cap. Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1259 (11th Cir. 1983).  Reliability is the "touchstone of admissibility" under Rule 803(6) and the district court has "broad discretion" to admit evidence under this rule.  *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183 (11th Cir. 2006) (quoting *United States v. Bueno-Sierra*, 99 F.3d 375, 378-79 (11th Cir. 1996)).

Florida law recognizes an implied covenant of good faith and fair dealing in every contract. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999); *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012). The implied covenant is intended to protect "the reasonable expectations of the contracting parties in light of their express agreement." *QBE Ins. Corp.*, 94 So. 3d at 548 (quoting *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996)). However, an exception exists where application of the covenant would contravene the express terms of the agreement. *Id.* Further, under Florida law, a material breach excuses a party from performance of the contract, although the injured party may waive the breach. *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 852 (11th Cir. 2013).

Here, as an initial matter, the issues of whether Schwiner's affidavit contained inadmissible hearsay, GMACM violated the implied covenant of good faith and fair dealing, and GMACM waived its right to revoke the escrow waiver, are not properly before us because the Lynches failed to raise these arguments before the bankruptcy court. *In re Lett*, 632 F.3d at 1226.

Nevertheless, considering the Lynches' *pro se* status and because our general rule barring review is non-jurisdictional, we will review these claims on the merits. First, the bankruptcy court did not clearly err in relying on Schwiner's affidavit because Schwiner properly authenticated the business records upon which he relied. *Itel Cap. Corp.*, 707 F.2d at 1259; *see also* Fed. R. Evid. 803(6).

Second, the Lynches' argument related to the implied covenant of good faith and fair dealing fails because the plain language of the mortgage gave GMACM the discretion to grant the Lynches a waiver of the requirement to pay into an escrow account, and it allowed GMACM to revoke the waiver at any time subject to a notice requirement. Thus, to adopt the Lynches' argument would improperly override the express contractual provision for revocation of the escrow waiver. *QBE Ins. Corp.*, 94 So. 3d at 548.

Finally, the Lynches' argument that GMACM waived the right to require the creation of an escrow account is meritless. Their reliance on the first breach rule is misplaced as there is no indication that GMACM ever ceased performance under the contract, let alone that any breach was material. *MDS (Canada) Inc.*, 720 F.3d at 852. Further, the record does not support a finding that GMACM waived its right to revoke the escrow waiver provision as it repeatedly sent the Lynches notices about their failure to provide insurance. This conclusion is also supported by the mortgage's plain language, which provided that any forbearance by GMACM in exercising its rights would not be considered a waiver of such rights. Accordingly, we affirm as to the district court's grant of summary judgment.

## III.    CONCLUSION

Based on the foregoing, the district court's rulings are **AFFIRMED.**